UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

JUSTIN MURPHY, GREGG LIVERMAN and
JEFFREY BUSH,

                                Plaintiffs,

                     -against-

CITY OF NEW YORK, NYPD OFFICER
SHAWN NIGRO, Shield No. 20998, NYPD
SERGEANT DIANA PICHARDO, Shield No.
2816, and NYPD JOHN/JANE DOE OFFICERS
1-12, individually,

                            Defendants.
------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation of Plaintiff Justin Murphy's, Gregg Liverman's and Jeffrey Bush's ("Plaintiffs") rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). The incident in question took place in this District in Kings County.

## JURY DEMAND

5.     Plaintiffs demand a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6.     At the time of the herein described incident Plaintiffs were residents of Scranton, Pennsylvania and Kings County.

7.     Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

9.     Defendant NYPD Officer Shawn Nigro, Shield No. 20998, NYPD Sergeant Diana Pichardo, Shield No. 2816, and NYPD John/Jane Doe Officers 1-12 were duly sworn officers, employees and agents of said department at all times relevant herein and were acting under the supervision of said department and

according to their official duties.  Officer Defendants are sued in their individual capacities.

10.    That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11.    Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

12.    On April 6, 2014, Plaintiffs were at a friend's party at 2249 Stillwell Avenue in Kings County.

13.    Plaintiffs estimate that there were thirteen people in attendance at the party, including Plaintiffs themselves.

14.    None of the Plaintiffs lived at the address.

15.    The front door to the apartment opened onto the kitchen and the living room.

16.    Plaintiffs were with fellow partygoers in the living room at the time of the incident in question.

3

17.     Sometime after midnight, Officer Nigro and Doe Officers 1-12 arrived and began kicking on the door to the apartment.

18.     Once Officer Nigro and Doe Officers 1-12 entered the apartment, they immediately began to handcuff everybody in attendance.

19.     Before long, all thirteen people in attendance at the party were handcuffed and laying face down in the living room.

20.     As Doe Officers roughly pushed Plaintiff Jeffrey Bush to the floor, Plaintiff Jeffrey Bush hit his mouth on the ground, knocking loose a filling from a previously chipped front tooth.

21.     As some of Doe Officers 1-12 handcuffed and forced party attendees to lie face down on the floor, other Doe Officers 1-12 searched other parts of the apartment, including the apartment's two to three bedrooms and bathroom which were located one right after another down a long hallway.

22.     Plaintiffs heard Doe Officers kicking their way into the bedrooms where Plaintiffs had not been.

23.     Doe Officers then arrested Plaintiffs and all partygoers and took them to PSA1.

24.     Plaintiffs and their fellow partygoers were incarcerated and taken to Central Booking the next day.

25.     At Central Booking, the partygoers were randomly divided into groups

of three for the purposes of being charged with criminal offenses.

26.     Plaintiff Justin Murphy was placed on one complaint with two fellow partygoers who are not parties in this action.  Plaintiff Gregg Liverman was placed on a second complaint with two fellow partygoers who are not parties in this action. Plaintiff Jeffrey Bush was placed on a third complaint with two fellow partygoers who are not parties in this action.  On information and belief, three other partygoers were are not parties in this action were placed on a fourth complaint.

27.     The three criminal complaints which corresponded to Plaintiffs and the fourth complaint against fellow partygoers all leveled identical false allegations.

28.     Sergeant Pichardo signed off on all of the complaints founded on Officer Nigro's false allegations despite their facial insufficiency and implausibility and Sergeant Pichardo failed to intervene to stop the false arrest and malicious prosecution.

29.     First, Officer Nigro stated to employees of the District Attorney's Office that he and Doe Officers 1-10 responded to 2249 Stillwell Avenue that evening in response to a radio run for gunshots fired inside said location.  On information and belief, this was not true, as Plaintiffs heard no gunshots at the party.

30.     Assuming, _arguendo_, that there had been a third party call to police about gunshots from _an_ apartment at 2249 Stillwell Avenue, which is a multi-apartment dwelling, the circumstances Officer Nigro and Doe Officers encountered

upon entering the apartment that is the subject of this action rendered unreasonable any police belief that the gunshots had been fired there, as Officer Nigro and Doe Officers encountered a calm and unremarkable party environment.

31.    Next, Officer Nigro stated to employees of the District Attorney's Office that he recovered a firearm, ammunition, heroin and marijuana from a television stand inside one of the apartment's bedrooms and falsely and maliciously stated that he found Plaintiffs and all partygoers who later became Plaintiffs' co-criminal defendants inside that single closed bedroom with the sole intent to place them near the television stand.

32.    Officer Nigro's statement was false because Plaintiffs were all in the living room at the time Officer Nigro and Doe Officers raided the apartment, two rooms away from the closed room where Officer Nigro claimed to have located contraband inside the television stand.

33.    In reliance upon Officer Nigro's false and malicious statements, which Sergeant Pichardo and Doe Officers 1-12 failed to intervene to correct at the moment of false arrest or throughout the subsequent malicious prosecution, Plaintiffs were charged with a multitude of serious crimes and suffered deprivations of their liberty of varying degrees of severity as a result.

34.    Approximately three months later, the charges against Plaintiffs were dismissed on the motion of the District Attorney.

35.     Plaintiffs suffered damages as a result of Defendants' actions, including deprivation of their liberty, damage to their reputations, humiliation, physical injury, emotional trauma, deprivation of a fair trial, and more.

36.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

37.     The aforesaid incident is not an isolated incident.  The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.  As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including

the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

38.     The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this
> [C]ourt, as well as knowledge of cases in other federal and
> state courts, has revealed anecdotal evidence of repeated,
> widespread falsification by arresting police officers of the
> [NYPD] . . . [T]here is some evidence of an attitude among
> officers that is sufficiently widespread to constitute a
> custom or policy by the [C]ity approving illegal conduct of
> the kind now charged.

Colon v. City of N.Y., Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y. November 25, 2009).

39.     Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

40.     Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional

rights. Despite such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

41. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

42. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

43. All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

44. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

9

45.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

46.     As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

47.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

48.     Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

49.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

50.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST

51.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

52.    Defendants violated the Fourth and Fourteenth Amendments because they arrested Plaintiffs without cause.

53.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

54.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
## MALICIOUS PROSECUTION

55.    Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

56.    Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 to be to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

57.     Defendants' prosecution of Plaintiffs constituted malicious prosecution in that there was no basis for Plaintiffs' arrest, yet Defendants continued with malice with the prosecution, which was resolved in Plaintiffs' favor.

58.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs' of their constitutional rights.

59.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FOURTH CLAIM
## EXCESSIVE FORCE

60.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

61.     The Individual Defendants used excessive force upon Plaintiffs.

62.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## FABRICATION OF EVIDENCE AND DENIAL OF CONSTITUTIONAL
## RIGHT TO FAIR TRIAL

63.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

64.     The Individual Defendants created false evidence against Plaintiffs and Individual Defendants also forwarded it to prosecutors in the District Attorney's Office with the goal of denying Plaintiffs a fair trial by injecting fabricated evidence into the proceeding.

65.     In creating false evidence against Plaintiffs likely to influence a jury's decision, and in forwarding false evidence to prosecutors, the Individual Defendants violated Plaintiffs' constitutional right to a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

66.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

67.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## FAILURE TO INTERVENE

68.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

Case 1:16-cv-00519-MKB-PK   Document 1   Filed 02/01/16   Page 14 of 17 PageID #: 14

69.     Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

70.     Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

71.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

72.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### SEVENTH CLAIM
### MONELL CLAIM

73.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

74.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

75.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited

to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

76.    The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

77.    The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Plaintiffs' safety, well-being and constitutional rights.

78.     The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Sixth and Fourteenth Amendment rights of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

D. Awards to Plaintiffs of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:    February 1, 2016
             New York, New York


                                 /s
                             Ryan Lozar
                             305 Broadway, 9th Floor
                             New York, New York 10007
                             (310) 867-1562
                             ryanlozar@gmail.com

                             *Attorney for Plaintiff*